## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| *Plaintiff,* | |
| vs. | **CASE NO. 19-24026-CIV-MOORE** |
| JACQUILINE D. GREEN, as Personal Representative of the Estate of Marie Green and as Co-Trustee of the Marie Mary Green Revocable Trust; BERT GREEN, as Co-Trustee of the Marie Mary Green Revocable Trust, | |
| *Defendants.* | |

## <u>DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>

Defendants Jacqueline and Bert Green are the adult children and heirs of their recently deceased mother, Marie Green. The Government sues Bert and Jackie in their representative capacities only. It seeks to collect a penalty imposed upon Marie Green for her failure to file a FinCEN Form TD F 90-22.1 for each of tax years 2010 and 2011, that would have satisfied her regulatory obligation to disclose information about bank accounts she owned or controlled outside of the United States. [1] For Marie Green's allegedly willful failure to file these two forms, the Government seeks penalties of $2,111,946.28—plus interest, additional failure-to-pay penalties, and costs of collection.

Dismissal of the Government's complaint is appropriate for two reasons. First, it is well established that under federal law, penalties abate upon the death. Marie Green has died. The

---

[1]     FinCEN Form TD F 90-22.1 is colloquially called an "FBAR" form. The terms will be used interchangeably in this Motion.

FBAR penalty is thus extinguished.  Second, even if the penalty survives death, the Government has not plausibly alleged that Marie Green behaved with the requisite intent—willfulness—to render her liable for it. *Willfulness* will be among the key issues in this case and this Motion. Rather, The Government's Complaint alleges only that certain accounts were established on Marie Green's behalf and that Marie Green followed the directions of attorneys, bankers, and relatives in handling her banking affairs. No facts are alleged that would allow a plausible inference that Marie Green's failure to file Forms TD F 90-22.1 was willful.

## I.      The Willful FBAR Penalty imposed upon Marie Green does not survive her death.

As their first ground for dismissal, Defendants observe that the Government's claim for a willful FBAR penalty against Marie Green cannot survive her death. "An action brought against a deceased party cannot continue 'unless the cause of action, on account of which the suit was brought, is one that survives by law." *United States v. Estate of Schoenfeld*, 344 F. Supp. 1354, 1369 (M.D. Fla. 2018) (quoting *Ex Parte Schreiber*, 110 U.S. 76, 80 (1884)). "'In the absence of an expression of contrary intent, the survival of a federal cause of action is a question of federal common law.'" *Id.* (quoting *United States v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993), *as amended* (Jan. 12, 1994)). With respect to willful FBAR penalties, "Congress has not specifically expressed its intention as to whether the Government's claim survives." *Id.* "Thus, the Court must turn to federal common law for guidance."

Under federal common law, "'[i]t is well-settled that remedial actions survive the death of [a party], while penal actions do not.'" *Id.* (quoting *NEC Corp.*, 11 F. 3d at 137). Accordingly, whether a claim survives death turns on whether it is for a penalty. Here, the Government specifically denominates this case as a "suit to recover the penalty pursuant to 31 U.S.C. § 5321(b)." [DE 1 at ¶4] And at least one court has determined that "The Bank Secrecy Act and its

implementing regulations thus expressly denominate the [Willful FBAR Penalty] imposed on Defendant to be a 'civil penalty.'" *See United States v. Simonelli*, 614 F. Supp. 2d 241, 244 (D. Conn. 2008). Accordingly, willful FBAR penalty abated upon Marie Green's death, and the instant suit must be dismissed.

The Court does not have to rely on Congress's and the Government's own labels to determine whether the instant suit is one for a penalty. It is plain from the nature of the claim. Recently, in *Kokesh v. Securities Exchange Comm'n*, 137 S. Ct. 1635 (2017), the United States Supreme Court described the essential characteristic of a penalty statute. There, it observed, "[a] 'penalty' is a 'punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offense against its laws.'" *Id.* at 1642 (quoting *Huntington v. Attrill*, 146 U.S. 657, 667 (1892)). The Court further observed, "[t]his definition gives rise to two principles." *Id.* "First, whether a sanction represents a penalty turns in part on 'whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual.'" *Id.* (quoting *Huntington*, 146 U.S. at 668). "Second, a pecuniary sanction operates as a penalty only if it is sought 'for the purpose of punishment, and to deter others from offending in like manner'—as opposed to compensating a victim for his loss." *Id.* (quoting *Huntington*, 146 U.S. at 668).

The FBAR penalty that the Government seeks in this case constitutes a penalty within this framework. It imposed for a wrong against the State, not any individual. The payment is made to the United States Treasury, not any kind of restitution or trust fund. And it is imposed for failure to comply with a state-imposed regulatory obligation—the mere failure to timely file a FinCEN Form TD F 90-22.1. To become liable, an individual need to have caused no actual harm at all, either to the State or to anyone else. Rather, the penalty serves a quintessentially penal purpose:

Deterrence. "The purpose of FBAR penalties is to promote compliance with the FBAR reporting and recordkeeping requirements." Internal Revenue Manual § 4.26.16.6.4.

Indeed, the District of Connecticut reached exactly this conclusion in *United States v. Simonelli*, 614 F. Supp. 2d 241 (2008). There, the Court observed that the FBAR penalty is not discharged in bankruptcy because it is a debt "for a fine, penalty or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." *Id.* at 242. The *Simonelli* court went even further, observing the FBAR Penalty qualified as a "penalty" even outside of the bankruptcy context:

> The FBAR penalty also fits the definition of 'penalty' in *Black's Law Dictionary*. A penalty is '[p]unishment imposed on a wrongdoer, usu[ally] in the form of imprisonment or fine; esp[ecially], a sum of money exacted as punishment for either a wrong to the state or a civil wrong (as distinguished from compensation for the injured party's loss)." Black's Law Dictionary 1168 (8th ed. 2004). Defendant's failure to file an FBAR was a wrong to the state; while Defendant's omission violated 31 U.S.C. § 5314, it resulted in no injured private party and no pecuniary harm, either to a private party or to the state. The FBAR penalty is assessed on Defendant as punishment, not as any sort of compensation for any pecuniary harm.

*Id.* at 244 n.6.

Because the FBAR penalty is imposed for a wrong against the state and to punish rather than compensate, it is a penalty that abates upon death. Accordingly, this case should be dismissed.

Before leaving this issue, however, prudence requires that this memorandum address a contrary decision by a non-binding court: *United States v. Estate of Schoenfeld*, 344 F. Supp. 3d 1354 (M.D. Fla. 2018). That case addressed the same issue presently before this Court—whether Willful FBAR penalties survive the death of the defendant. The Court held that they do.

But the *Schoenfeld* Court employed an incorrect analytical framework. And it was led to do so by the parties. Early in its decision, the *Schoenfeld* Court observes, "in the parties' briefs,

they rely on the framework set forth in *Hudson v. United States*, 522 U.S. 93 (1997) to determine whether the FBAR penalty is remedial or penal in nature." But this was wrong. *Hudson* provides an incorrect rule of decision. *Hudson* does not concern when a nominal penalty is penal or remedial for purposes of abatement upon death. Rather, it concerns when a nominally civil penalty "was so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a *criminal* penalty." *Hudson*, 522 U.S. at 99. Specifically, *Hudson* concerned when a nominally civil penalty is so punitive that it can bar on a subsequent criminal prosecution under double jeopardy principles. *Id.* at 95–96 ("We hold that the Double Jeopardy Clause of the Fifth Amendment is not a bar to the later criminal prosecution because the administrative proceedings were *civil, not criminal*." (emphasis added)); *id.* at 99 ("The Clause protects only against the imposition of multiple *criminal* punishments for the same offense." (emphasis supplied)). *Hudson* does not answer the question of whether a monetary cause of action is remedial or penal, which is the relevant question to determine whether a claim abates upon a defendant's death. *Hudson* sets forth a much higher standard. It is well established that even clearly civil penalties abate upon death. *See, e.g.*, *United States v. Edwards*, 667 F. Supp. 1204, 1215 (W.D. Tenn. 1987) (Holding that an EPA Clean Water Act Penalty is a "civil penalty" that abates upon death because it "was intended by Congress as a means to deter people from violating the Act").

As explicitly alleged in the Government's Complaint, Marie Green died "on or about August 5, 2018." [DE 1 at ¶7.] For the reasons set forth above, the Government's claim for a willful FBAR penalty did not survive her death. The Government's Complaint accordingly should be dismissed with prejudice.

II.   **The Government's Claims must be dismissed because it has failed to plausibly allege that Marie Green behaved willfully.**

Even if the Government's Claim did survive Marie Green's death, it must be dismissed under Federal Rule of Civil Procedure 12(b)(6). The Government has not plausibly alleged that Marie Green acted with the requisite mental state—willfulness—in accordance with Federal Rule of Civil Procedure 8(a). In making this argument, this motion will discuss in depth the applicable "plausibility" pleading standard. It will then apply this standard to the Government's allegations in this case.

   A.   *The Rule 12(b)(6) Motion to Dismiss Standard and Rule 8(a)'s Pleading Requirements.*

Over the past several years, Judge Moore has articulated the following legal standard in his written orders deciding motions to dismiss:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requirement "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citation and alterations omitted). When considering a motion to dismiss, the court takes the plaintiff's factual allegations as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

> A complaint must contain enough facts to plausibly allege the required elements. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). A pleading that offers "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

*E.g.*, *PNC Bank, N.A. v. Fresh Diet, Inc.*, Case No. 17-21027-CIV, 2018 WL 3412871 (S.D. Fla. Mar. 22, 2019).

This articulation of the Rule 12(b)(6) standard is, of course, correct. However, due to its centrality to this Motion, Defendants wish to elaborate upon this standard's application to a defendant's mental state, as explicitly set forth in the Supreme Court's seminal decisions in *Bell Atl. Corp. v. Twombly* and *Ashcroft v. Iqbal*.  Both *Twombly* and *Iqbal* concerned whether a Plaintiff had plausibly alleged a defendant's mental state as required to state a claim consistent with Federal Rule of Civil Procedure 8(a). In both cases, the Supreme Court found the plaintiffs' allegations wanting, and held that the complaints ought to be dismissed.

In *Twombly*, plaintiffs attempted to plead an antitrust conspiracy within the telecommunications industry. Such a claim requires a "meeting of the minds" among the defendants. 550 U.S. at 557. The *Twombly* complaint, however, alleged only that the defendants "engaged in 'parallel conduct' in their respective service areas'" to inhibit the growth of new competitors:

> In the absence of any meaningful competition between the [ILECs] in one another's markets, and in light of the parallel course of conduct that each engaged in to prevent competition from CLECs within their respective local telephone and/or high speed internet services markets and the other facts and market circumstances alleged above, Plaintiffs allege upon information **\*\*1963** and belief that [the ILECs] have entered into a contract, combination or conspiracy to prevent competitive entry in their respective local telephone and/or high speed internet services markets and have agreed not to compete with one another and otherwise allocated customers and markets to one another

*Id.* at 551.

The Supreme Court held that these allegations failed to satisfy Rule 8(a) because it merely alleged conduct *consistent* with an agreement, rather than conduct that that plausibly suggested one. "The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief." *Id.* at 557.

In *Ashcroft v. Iqbal*, the Supreme Court confirmed that allegations merely consistent with a required mental state are not sufficient to plausibly state a claim. *Iqbal* concerned a Muslim Pakistani plaintiff's *Bivens* action for invidious discrimination. The claim required that the plaintiff plausibly allege that defendants acted with a "discriminatory purpose." *Iqbal*, 566 U.S. at 676. In analyzing the sufficiency of the *Iqbal* plaintiff's allegations, the Court reiterated and reaffirmed its holding in *Twombly*:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of "'entitlement to relief.'" *Id.*, at 557.

The *Iqbal* Court elaborated, observing that evaluating the sufficiency of a complaint is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

*Iqbal* therefore recommends a two-pronged approach to analyzing a complaint. "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 680. Then, the court should identify the well-pleaded, non-conclusory factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

Applying this framework, the *Iqbal* Court determined the following of the plaintiff's allegations were mere conclusions, not entitled to the presumption of truth:

- That defendants "'knew of, condoned, and willfully and maliciously agreed to subject [plaintiff]' to harsh conditions of confinement 'as a matter of policy, solely on account of [plaintiff's] religion, race, and/or national origin and for no legitimate penological interest." *Iqbal*, 556 U.S. at 680.

- That Defendant John Ashcroft was the "'principle architect' of this invidious policy." *Id.* at 681.

- That Defendant Robert Mueller "was 'instrumental' in adopting an executing" this policy. *Id.*

The Court then analyzed what remained, noting that the well-pleaded allegations alleged that "the [FBI], under the direction of Defendant Mueller, arrested and detained thousands of Arab Muslim men . . . as part of its investigation of the events of September 11" and that "[t]he policy of holding post-September-11th detainees in highly restrictive conditions of confinement until they were 'cleared' by the FBI was approved by Defendants Ashcroft and Mueller in discussions in the weeks after September 11, 2001." *Iqbal*, 556 U.S. 681.

The Court concluded that "[t]aken as true, these allegations *are consistent with* petitioners' purposefully designating detainees 'of high interest' because of their race, religion, or national origin." *Id.* But mere consistency is not enough: "[G]iven more likely explanations, they do not plausibly establish" the discriminatory purpose necessary to state a claim. Accordingly, the Supreme Court reversed the Second Circuit Court of Appeals and held that the *Iqbal* plaintiff failed to state a claim under Rule 8(a)(2).

Applying *Twombly* and *Iqbal*'s directives to Marie Green's case yields a similar result. As discussed in more detail, below, the well-pleaded allegations in the Governments complaint are— at most—merely consistent with Marie Green behaving willfully. But, as in *Twombly* and *Iqbal*,

these allegations fail to nudge the Government's claim from the possible to the plausible, and accordingly fail to show entitlement to relief as Rule 8(a)(2) requires.

> **B. The Government's Complaint fails to plausibly allege that Marie Green acted willfully and must be dismissed for that reason.**

A valid claim for a willful FBAR violation requires the following showing: "(1) the person must be a U.S. Citizen; (2) the person must have or have had an interest in, or authority over a foreign financial account; (3) the account had a balance exceeding $10,000.00 at some point during the reporting period; and (4) the person must have willfully failed to disclose the account and file a[n] FBAR." *E.g.*, *United States v. Schwarzbaum*, Case No. 18-81147-CIV, 2019 WL 3997132, at *3 (S.D. Fla. Aug. 23, 2019).

Willfulness is essential to the Government's case. There is a separate penalty for non-willful failure to file FBAR forms. But the Government has chosen not to pursue that claim. Non-willful FBAR penalties are limited to $10,000 per FBAR form (or, arguably, per account that should have been included on the FBAR form). If the Government sought non-willful FBAR penalties against Defendants for the conduct at issue in this suit, the Government would be limited to a recovery of only $30,000, plus interest—$10,000 for each undisclosed account for each year. Only because the Government contends that Marie Green *willfully* violated the FBAR reporting requirement are they able to seek the $2,111,946.28 at issue in this suit.

As set forth above, Federal Rule of Civil Procedure 8(a)(2) requires the Government to plausibly allege each of these essential elements to state a claim that can withstand a Motion to Dismiss under Rule 12(b)(6). The Government fails to state a claim in this case because it has not plausibly alleged that Mary Green acted willfully.

1.   The Definition of FBAR willfulness

There is no controlling law that defines "willfulness" under the FBAR statute. Defendants will contend that "willfulness" requires the intentional violation of a known legal duty. Defendants anticipate that the Government will argue that merely reckless conduct is enough. Should the case progress, the appropriate definition of willfulness will be the subject of forthcoming motion practice. However, the Government has failed to plausibly allege willfulness even under the less demanding "recklessness" definition. For the purposes of this motion only, Defendants will accordingly adopt this "recklessness" definition of FBAR willfulness.

In a civil FBAR trial earlier this year, Southern District of Florida Judge Robin L. Rosenberg adopted the "recklessness" definition of willfulness articulated by the Third Circuit Court of Appeals in the matter of *Bedrosian v. United States*, 912 F.3d 144 (3d Cir. 2018).  *See United States v. Dadurian*, 18-81276-CIV, DE 88, at 13–14 (S.D. Fla. Aug. 22, 2019). Per *Bedrosian*, a person willfully violates the FBAR requirement if he or she "(1) clearly ought to have known that (2) there was a grave risk that [the filing requirement was not being met] and if (3) he [or she] was in a position to find out for certain very easily." 912 F.3d at 153 (alterations in original).

As set forth below, the Government's complaint fails to plausibly allege that Marie Green acted in a matter that satisfies this standard.

2.   The Government's Insufficient Allegations

The Government's Complaint is remarkable in its lack of allegations concerning Marie Green's conduct, rather than the conduct of unidentified others. Further, it includes no allegations that bear upon whether Marie Green "clearly ought to have known" of her reporting obligations or whether she "was in a position to find out for certain very easily"—the key issues in this case.

Instead, the Complaint alleges, for the most part, that foreign bank accounts and related corporations were established "on Marie Green's behalf" [E.g., DE 1 at 31], with the involvement of her husband and various banking and legal professionals, and that Marie Green merely failed to file the FBAR forms required of her for 2010 and 2011.

This dearth of supportive allegations is not surprising given the facts of this case. During the years in which the Government alleges that Marie Green willfully violated her FBAR reporting obligations—2011 through 2012—Marie Green was *more than ninety years old.* She had spent her life as a housewife to her husband, Isidor, who handled the family's financial affairs while he was living. Isidor died in 2005, when Marie Green was eighty-five. There is no allegation that Marie Green knew of the FBAR filing requirement. And given Marie Green's advanced age and limited involvement in her family's financial affairs, no facts will exist that tend to show that Marie Green "clearly ought to have known" of her FBAR reporting obligations.

Application of the "two-pronged" approach articulated in *Ashcroft v. Iqbal* to this instant Complaint reveals why it should be dismissed for failure to plausibly state a claim. *See* 556 U.S. at 678. As the first step of this analysis, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Here, this applies to all conclusory allegations of Marie Green's willfulness. Specifically, Paragraph 57 of the complaint states, in its last sentence, that "[Marie Green's] failure to timely file the 2010 FBAR was willful." Similarly, the last sentence of Paragraph 59 states that "[Marie Green's] failure to timely file the 2011 FBAR was willful. These allegations are mere conclusions. Accordingly, there are not well-pleaded and not entitled to an assumption of truth even at the motion-to-dismiss stage. *See Iqbal*, 556 U.S. at 680–81 (similarly affording no assumption of truth to allegations that defendants "'knew of, condoned, and willfully

and maliciously agreed to subject [plaintiff]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no penological interest"). Such allegations are "nothing more than a 'formulaic recitation of the elements'" of a willful FBAR claim. *See id.* at 681 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Second, the Court should turn to those allegations that are well-pleaded—that is, allegations that are not conclusory, threadbare recitations of the elements of a claim. The Court assumes the truth of these allegations, and considers whether "they plausibly suggest an entitlement to relief." *Id.* Here—as in *Twombly* and *Iqbal*—the Government's well-pleaded allegation do not plausibly suggest that Marie Green acted with the mental state required to entitle it to the relief it seeks.

This conclusion is appropriate only after a close reading of the complaint. This Motion undertakes such a reading now. More than half of the Complaints numbered paragraphs fail even to reference any conduct by Marie Green at all. Rather, the Complaint's allegations of Marie Green's conduct are as follows:

*First*, the substance of the Government's Complaint [DE 1] begins with allegations concerning the opening of various bank accounts at Bank Leumi in Israel during the years 1980 through 2006.[2] These allegations appear in Paragraphs 13 through 30, under the subheading "The Acuva Bath Itzhak Accounts." Crucially, Marie Green is alleged to have done only the following with respect to the accounts. In paragraph 17, she is alleged to have "had a financial interest in and signature authority over" an account at Bank Leumi ending in 617. Paragraphs 19 and 20 alleges

---

[2]     As an aside, the relevance of these allegations to the Government's claim is questionable. They are not the basis for the penalties at issue in this suit.

that in July 2005, Marie Green acknowledge receipt of held mail related to the account and signed instructions regarding how funds in this account should be invested. Paragraph 21 states that in July 2006, Marie Green signed a declaration for Bank Leumi indicating that she was not a resident of Israel for purposes of the Israeli Income Tax Ordinance.  Paragraphs 26 and 27 allege that Marie Green had a financial interest in another account with UBP Bank in Switzerland (which account was opened when Marie Green was 86 years old) and that Marie Green provided a signature specimen with the bank. Finally, Paragraph 29 alleges that Marie Green traveled to UBP with her daughter Jackie in June 2009 (when Marie Green was 89), and while there withdrew some cash from the account and instructed that the account be closed. The Complaint thus alleges that with respect to these accounts, Marie Green provided signatures on documents and accompanied her daughter to withdraw funds and close the bank account.

_Second_, Paragraphs 31 through 39 contain allegations concerning additional accounts with Bank Leumi, opened around 2008 (when Marie Green was 89). Again, allegations concerning Marie Green's conduct in relation to these accounts are scant. Paragraph 34 alleges that Marie Green had a financial interest in a Bank Leumi account ending in 385. And Paragraph 39 alleges that "Marie Green never reported the Mercantile '033 to the United States on an FBAR." Paragraph 38 of the complaint alleges that the funds in the Bank Leumi '385 account were transferred to the Mercantile '033 account in 2010. But the complaint does not allege that Marie Green (by this time 90 years old) had any idea.

_Third_, Paragraphs 40 through 46 of the Complaint contain allegations concerning additional accounts with Bank of Jerusalem, in Israel. Only Paragraph 43 mentions Marie Green's conduct. It alleges (in conclusory fashion) that "Marie Green had a financial interest in the Bank of Jerusalem '254 account.

*Fourth*, Paragraphs 47 and 48 of the Complaint allege—on information and belief—that "Isidor and Marie Green opened a joint account at United Overseas Bank in Geneva" in 1990. Further, Paragraph 48 alleges that in 2008 or 2009 (when Marie Green was either 89 or 90), bank officials contacted Jackie Green about this account and "Jacqueline Green and Marie Green chose to close" it.[3]

*Fifth*, Paragraphs 49 through 53 of the Complaint concern Marie Green's efforts—through prior lawyers—to participate in a favorable IRS Offshore Voluntary Disclosure Program beginning in 2013. The violations at issue in this suit were complete by June 30, 2012. The allegations in these these paragraphs accordingly have no bearing on Marie Green's liability. Indeed, because they show engagement with the IRS and a good faith effort to resolve the situation, they tend to undercut the Government's claims of willful misconduct in any event.

*Sixth*, Paragraphs 54 through 59 of the Complaint fall under the heading "Marie Green's Willful Failure to File FBARs" and accordingly ought to set forth the Government's strongest allegations on the issue of willfulness. But there simply isn't enough alleged from which willfulness can be inferred. Instead, in conclusory fashion, these paragraphs state the following: Marie Green had an interest in certain bank accounts (Paragraph 56); Marie Green didn't file an FBAR form until June of 2013 (Paragraph 54); and Marie Green didn't pay taxes income received in her foreign bank accounts from 2005 through 2011, when she was between 85 and 91 years old (Paragraph 55).

These allegations simply do not plausibly suggest reckless behavior by Marie Green that would rise to the necessary willfulness standard. None of the Government's allegations suggest

---

[3]     This account, too, is of questionable relevance to this suit. It also does not form the basis of the penalties at issue.

that Marie Green "clearly ought to have known" of a "grave risk" that she was failing to meet her reporting obligations, or that "she was in a position to find out for certain very easily." *See Bedrosian*, 912 F.3d at 153. While the Complaint's allegations are arguably *consistent* with willful behavior, they are just as consistent with the reality of this case—that during the years at issue Marie Green was a ninety-plus year old woman who naturally (or, perhaps, even merely negligently)[4] was unattuned to FinCEN's filing requirements.

As the Supreme Court made plain in *Twombly* and *Iqbal*, allegations merely "consistent" with liability are not sufficient to survive a motion to dismiss. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of an entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S at 557. In such circumstances, dismissal is appropriate. *Id.*

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully requests that the Court grant Defendants' Motion and dismiss the Governments' Complaint for failure to state a claim under Federal Rule of Civil Procedure 8(a)(2).

---

[4]     Negligence entails a lower degree of mental culpability than recklessness and would not support a willful FBAR  penalty under any "willfulness" definition.

16

Dated: November 25, 2019

Respectfully Submitted,

/s/ Jeffrey A. Neiman
Jeffrey A. Neiman
Fla. Bar No. 544469
jneiman@mnrlawfirm.com
Derick Vollrath
Fla. Bar No. 126740
dvollrath@mnrlawfirm.com
**MARCUS NEIMAN & RASHBAUM LLP**
100 Southeast Third Ave
Suite 805
Fort Lauderdale, Florida 33315
Telephone: (305) 400-4269

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2019, a true and correct copy of the foregoing was

served via CM/ECF on all counsel or parties of record on the Service List.

By:     /s/ Derick Vollrath
        Derick Vollrath