IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CIVIL NO. 1:19-24026-KMM

UNITED STATES OF AMERICA,

   *Plaintiff*,

 v.

JACQUELINE D. GREEN, as Personal Representative of the Estate of Marie Green and as Co-Trustee of the Marie Mary Green Revocable Trust; BERT GREEN, as Co-Trustee of the Marie Mary Green Revocable Trust,

   *Defendants*.

**UNITED STATES' OPPOSITION TO MOTION FOR RECONSIDERATION**

On April 27, 2020, the Court correctly denied (Dkt. 25) Defendants Jacqueline Green and Bert Green's Motion to Dismiss (Dkt. 13). Now, the Greens have moved for reconsideration. (Dkt. 26.) Their substantive arguments were addressed in the parties' briefing—or at the very least could have been. That is reason enough to deny the Greens' Motion. "A motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002) (internal quotation marks omitted).

Even if the Court chooses to reach the substance of the Greens' arguments, it should deny reconsideration. The Greens have identified no error, let alone clear error or manifest injustice, in the Court's Order denying the Greens' Motion to Dismiss.

### A.  *The Court's Analysis of the FBAR Penalty Was Correct*

The Greens advance several meritless points in arguing that the Court clearly erred.

#### 1. *The FBAR Penalty Is Intended in Part to Compensate the United States for Tax Losses*

First, the Greens incorrectly claim that the FBAR penalty, considered on its face, does not compensate the government for the loss of tax on income in foreign accounts or for its expenses in investigating foreign accounts. (Mot. Reconsider 2-4 (Dkt. 26).) It's true that tax statutes require accurate reporting of worldwide income and impose penalties for some inaccuracies. *See* I.R.C. §§ 61, 6662.[1] But this case well illustrates why those statutes are not always enough to make the government whole. According to the Greens' Motion, Marie Green paid about $700,000 in back taxes and penalties covering the years 2005 through 2012, and that these claims "compensate the government for the tax loss alleged." (*See* Mot. Reconsider 5 (Dkt. 26).) Marie's payments compensate the United States for those years, perhaps. But Marie and Isidor Green first opened a foreign bank account in the name of a company in 1988. (Compl. ¶ 14 (Dkt. 1).) It's reasonable to infer that during many of the years between 1988 and 2004, the Greens realized taxable income in their foreign accounts, but failed to pay tax on it. By the time Marie entered the offshore voluntary disclosure program, the general three-year statute of limitations for the IRS to assess tax and penalties had long since run for those years. *See* I.R.C. § 6501.

Furthermore, it is incorrect to suggest, as the Greens do, that the FBAR penalty is entirely divorced from tax losses. Although the maximum FBAR penalty is set by the account's balance, the statute provides a defense for non-willful

---

[1] The Greens focus on unreported investment income generated by the funds in the accounts, but there may be other tax issues presented by secret foreign accounts—whether the deposited funds were unreported taxable income, for example.

U.S. Opp. Mot. Reconsideration – p. 2

penalties where the accountholder's violation of the reporting requirement "was due to reasonable cause" and "the amount of the transaction or the balance in the account at the time of the transaction was properly reported." 31 U.S.C. § 5321(a)(5)(B)(ii). Congress explained that the penalty could be "waived if any income from the account was properly reported on the income tax return and there was reasonable cause for the failure to report." H.R. Conf. Rep. 108-755, at 615, 2004 U.S.C.C.A.N. 1341, 1668. Furthermore, Congress gave the Secretary of the Treasury discretion to set an appropriate penalty amount. *See* § 5321(a)(5) (setting a maximum penalty rather than a specific amount). Congress expected the Secretary to exercise discretion appropriately for the facts of the case—and IRS guidance instructs examiners to take into account, among other factors, "[t]he nature of the violation and the amounts involved." I.R.M. § 4.26.16.6.7(3)(c).

Even though the statutory cap is tied to the account balance, rather than a tax loss, the FBAR penalty remains one way for the United States to remediate a tax loss. Courts have repeatedly rejected the argument that a statute is punitive if it is not tied to a quantifiable loss suffered by the government. This principle was explained in detail in the United States' Opposition to the Motion to Dismiss (*see* Opp. Mot. Dismiss 6-7, 9-12 (Dkt. 16)), and it has repeatedly been upheld by courts. For instance, in *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232 (1972), the Supreme Court considered a statute that required both forfeiture of undeclared imported goods and payment of a monetary penalty equal to the goods' value. Despite the penalty, the statute was remedial because it "prevents forbidden merchandise from circulating in the United States, and, by its monetary penalty, it provides a reasonable form of liquidated damages for violation of the inspection provisions and serves to reimburse the Government for investigation and enforcement expenses." *Id.* at 237. More recently, districts court have held that penalties imposed for failure to report a controlled foreign entity were remedial, and therefore not subject to

scrutiny under the Excessive Fines Clause. *Dewees v. United States*, 272 F. Supp. 3d 96, 100-101 (D.D.C. 2017); *In re Wyly*, 552 B.R. 338, 612-13 (N.D. Tex. 2016). Like the FBAR penalty for failing to report a foreign bank account, these penalties may be imposed regardless of whether the government suffers any tax harm.

### 2. *Remedial Penalties Need Only Redress a Monetary Harm to the United States*

Similarly, the Greens now incorrectly contend that remedial penalties must compensate a "direct natural and proximate consequence of the violation." (Mot. Reconsider 6-7 (Dkt. 26).) They cite two cases for that proposition: *United States v. Price*, 290 F.2d 525 (6th Cir. 1961), and *Porter v. Montgomery*, 163 F.2d 211 (3rd Cir. 1947).[2] The statutes from which those cases arise are nothing like the ones here. In *Price* and *Porter*, the United States did not suffer monetary harm as a result of the defendants' conduct. Indeed, the defendants' conduct had little to do with the United States.

*Price* and *Porter* were both suits against sellers who exceeded ceilings set in price control regulations. *Price*, 290 F.2d at 525-26; *Porter*, 163 F.2d at 212. By statute, the buyers of the products were given the primary remedy of a suit against the sellers to recover treble damages. The United States could bring suit, but only if the buyer could not or did not. *See* Defense Production Act of 1950, § 409(c), Pub. L. No. 81-774, 64 Stat. 798, 811 (1950) (*Price*); Emergency Price Control Act of 1942, § 205(e), Pub. L. No. 77-421, 56 Stat. 23, 34 (*Porter*). Congress intended the statutes to benefit the buyers of price-controlled commodities. In other words, the harm the statutes sought to redress lay between private entities, not between a private entity and the United States. The United States' claims in *Price* and *Porter* were more

---

[2] The United States briefly discussed *Price* in explaining what constitutes a non-remedial penalty. (*See* Opp. Mot. Dismiss 6 (Dkt. 16).)

akin to policing private conduct than to protecting the government's sovereign rights.

By contrast, where the United States **has** suffered harm to its sovereign rights as a result of the defendant's conduct, courts have been willing to find that the cause of action is remedial. For instance, in 1871, the Supreme Court considered a statute that required a person who received illegally imported merchandise to "forfeit and pay a sum double the amount or value of the goods." *Stockwell v. United States*, 80 U.S. (13 Wall.) 531, 533 (1871). The Court held that the statute was remedial because "[i]ts plain purpose was to protect the government in the unembarrassed enjoyment of its rights to all goods and merchandise illegally imported." *Id.* at 546-47. The FBAR penalty's purpose is likewise to protect the government in its unembarrassed enjoyment of tax on worldwide income. Similarly, courts have found that where the United States has suffered financial harm, a penalty on top of damages was an appropriate device to make sure the government was made whole. *See United States v. Grannis*, 172 F.2d 507 (4th Cir. 1949) (previous version of False Claims Act); *United States v. Posner*, 269 F.2d 742, 745 (3d Cir. 1959) (Surplus Property Act).

As explained above, the FBAR penalty is designed to secure the government's right to tax worldwide income and to compensate it for taxpayers' use of foreign accounts to avoid that tax. It is much more analogous to civil tax penalties or customs duties than to the price control statutes at issue in *Price* and *Porter*.

### 3. *The FBAR Penalty Is Remedial Even Though It Deters Misconduct*

The Greens cite additional (and after-enactment) legislative history to show that the 2004 changes to the FBAR penalty were intended to improve reporting of foreign financial accounts. (Mot. Reconsider 7 (Dkt. 26).) That observation is true, but unremarkable—it carries little weight here. As the United States noted in its Opposition, "all civil penalties have some deterrent effect" on the conduct they

penalize. *Hudson v. United States*, 522 U.S. 93, 102 (1997) (cited in Opposition at 6 and 10). The FBAR penalty is no different. The fact that it encourages compliance does not answer the question of whether it abates upon death. As the Eleventh Circuit has explained, where a statute has "certain punitive aspects," but also "serve[s] important nonpunitive goals," the government's claim can survive the defendant's death. *United States v. Land, Winston County*, 221 F.3d 1194, 1198 (11th Cir. 2000) (quoting *United States v. Ursery*, 518 U.S. 267, 290 (1996)) (internal quotation marks omitted). *See also, e.g.*, *Kirk v. Commissioner*, 179 F.2d 619, 621 (1st Cir. 1950) (holding that tax fraud penalty "[n]o doubt . . . has a deterrent effect upon those who would consider the perpetration of such a fraud," but was remedial regardless).

Thus, the Greens' additional citation of legislative history does nothing to show the Court was wrong in concluding that "although the FBAR penalty serves some retributive and deterrent purposes, those purposes does not unilaterally render the FBAR penalty penal in nature." (Order 13 (Dkt. 25).)

### B. *The Court Did Not Convert the Motion to Dismiss*

Finally, the Greens claim that the Court converted their motion to dismiss into one for summary judgment. (Mot. Reconsider (Dkt. 26).) That argument is spurious for two reasons. First, in context, the Court was not making a factual finding when it stated that "Marie's failure to satisfy the FBAR filing requirements may have deprived the Government of taxes on investment gains she made in the accounts at issue, hindered the Government from investigating and prosecuting crimes . . . , and forced the Government to expend significant resources to investigate Marie's accounts." (Order 11-12 (Dkt. 25).) Rather, the Court was explaining why the FBAR penalty has a remedial purpose. (*See id.* at 11 (citing *United States v. Garrity*, No. 3:15-CV-243(MPS), 2019 WL 1004584, at *9 (D. Conn.

Feb. 28, 2019), discussing remedial aspects of the FBAR penalty, and stating, "**[f]or example, in this case . . .**" as a preface to discussion of facts alleged in the Complaint (emphasis added)).

Second, even if the Court's statement could be read as an analysis of the facts of this case, it was an appropriate one. On a motion to dismiss, the Court takes well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). The facts in the Complaint include that Marie Green enrolled in the Offshore Voluntary Disclosure Program in 2013, then withdrew. (Compl. ¶¶ 49-53 (Dkt. 1).) And it is reasonable to infer from those facts that Marie Green's non-compliance occasioned investigative costs for the government. The Court's observation was both apt and appropriate.[3]

## C. Conclusion

The Greens have not presented any substantive arguments in their Motion for Reconsideration that were unavailable at the time of the parties' initial briefing. The arguments they do present—including the claim that the Court converted the motion to dismiss into one for summary judgment—lack merit. The Court should deny the Motion for Reconsideration.

---

[3] The United States should not be required to apportion the costs attributable to Marie Green from the costs attributable to other participants in the OVDP. If even possible, it would be a tremendous undertaking to calculate the person-hours that went into designing, analyzing, and administering the OVDP. That is not required—a penalty is remedial if it works rough justice, and no precise calculation of damages to the government is necessary. *See, e.g.*, *Rex Trailer Co. v. United States*, 350 U.S. 148, 152-53 (1956) (holding that government did not need to allege or show specific damages in order to prevail on Surplus Property Act claim).

U.S. Opp. Mot. Reconsideration – p. 7

Respectfully submitted this 14th day of May, 2020.

                              RICHARD E. ZUCKERMAN
                              Principal Deputy Assistant Attorney General

                              /s/ Adam Strait
                              ADAM D. STRAIT (Mass. BBO No. 670484)
                              MARGARET S. SHOLIAN (Wash. Bar No. 51444)
                              JOHN P. NASTA, JR. (Fla. Bar No. 1004432)
                              Attorneys, Tax Division
                              U.S. Department of Justice
                              P.O. Box 14198
                              Washington, D.C. 20044
                              Telephone:   (202) 307-2135 (Strait)
                              Telephone:   (202) 514-5900 (Sholian)
                              Telephone:   (202) 307-6560 (Nasta)
                              Facsimile:    (202) 514-4963
                              adam.d.strait@usdoj.gov
                              margaret.s.sholian@usdoj.gov
                              john.nasta@usdoj.gov

                              *Of Counsel:*
                              ARIANA FAJARDO ORSHAN
                              U.S. Attorney, Southern District of Florida

                              *Attorneys for the United States of America*